IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ROBERT ROSS,**

    **Petitioner,**

**vs.**                                         **No. CIV 00-1726 JP/LCS**

**RON LYTLE,**

    **Respondent.**

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court upon Respondent's Motion to Dismiss, filed March 16, 2001 (Doc. 16). The Court, having considered the submissions of the parties, record, relevant law, and being otherwise fully informed makes the following proposed findings:

### PROPOSED FINDINGS

1. This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed December 7, 2000. Respondent filed his Motion to Dismiss on March 16, 2001. (*Doc. 16*). Robert Ross (Ross) challenges the sentence entered after Judgment made by the Second Judicial District Court in *State v. Ross*, No. CR 97-3091 (County of Bernalillo, New Mexico).

2. As grounds for federal habeas review, Ross asserts that the state made misrepresentations when he entered into his plea agreement. Specifically, he asserts a "breach of promise/unkept promise" claim, a "due promise violation" claim, and a "misrepresentation of

1

plea" claim.[1] The Petitioner also raises issues of ineffective assistance of counsel and cruel and unusual punishment. Ross does not attack his conviction, only the sentence.

3. On March 23, 1999, Ross entered into a Repeat Offender Plea and Disposition Agreement, (Ex. C. to Answer), in which he agreed to plead "no contest" to solicitation to commit trafficking and trafficking (by distribution)(cocaine). Under the terms of this plea agreement, the State agreed to "order the defendant's incarceration to be transferred to the State of North Carolina, provided that New Mexico and North Carolina have an agreement regarding the reciprocal exchange of prisoners. The parties understand that the defendant shall then be subject to the laws and regulations governing the North Carolina Department of Corrections. In the event that such a reciprocal prisoner exchange agreement does not exist, the defendant's incarceration shall be transferred to a state facility where the in-custody population contains a significant percentage of African-Americans." (Ex. C. to Answer).

4. Ross appeared for a plea hearing on March 23, 1999 and was sentenced on June 4, 1999. The Judgment, Sentence and Commitment, filed September 27, 1999, recited that the court accepted Ross' guilty plea and that he was sentenced to a term of incarceration of eighteen years for the trafficking (by distribution)(cocaine), with concurrent sentences for another offense. The Corrections Department of the State of New Mexico was thereafter commanded to take custody of the defendant. (Ex. A to Answer). The Judgment further included the North Carolina "transfer" language as provided in the plea agreement. (Ex. A to Answer).

5. Under the terms of the plea agreement, the Petitioner waived his rights to file a direct appeal. (Ex. C to Answer). In addition, Respondent concedes, and this Court finds, that

---

[1] Because these claims represent a similar argument, they will be analyzed collectively.

Ross has exhausted his available state remedies and the petition is properly before the Court. On August 15, 2000, Ross filed his State Petition for Writ of Habeas Corpus in the Second Judicial District for the State of New Mexico. (Ex. F to Answer). In that petition, the Petitioner asserted the following claims: breach of promise/unkept promise, due process violation, ineffective assistance of counsel, cruel and unusual punishment, and misrepresentation of plea and sentencing. On August 30, 2000, the district court denied his petition. (Ex. G to Answer). The Petitioner subsequently filed a Petition for Writ of Certiorari, (Ex. H to Answer), and the court denied the writ on October 18, 2000. (Ex. I to Answer). Once Ross exhausted all of his state court remedies, he filed his Petition for Writ of Habeas Corpus in federal court.

## **VOLUNTARINESS OF PLEA**

6.   In three of the Petitioner's claims, breach of promise, due process violation, and mispresentation of plea, Ross alleges that language, which was originally promised, was left out of his final plea agreement. Specifically, Ross asserts that "[t]he state made false promises for the sole purpose of enticing and coercing a signed confession/conviction from myself." The language at issue included possibilities of program participation including, substance abuse, social awareness, work release and/or study release programs, etc. if he were to be transferred to the North Carolina facility. The Petitioner argues that this language was initially part of his plea agreement, however, once he was sentenced, the state failed to uphold its promise and failed to insert the language in the final draft of the plea agreement. The Petitioner also asserts that the language pertaining to the possibility of being transferred to an all "African-American" "in-custody" population was also language he did not agree upon.

7.   On habeas review, a federal court may set aside a state court guilty plea only for

3

failure to satisfy due process. *See Miles v. Dorsey*, 61 F. 3d 1459, 1465 (10th Cir. 1995). A defendant has not been given due process unless his guilty plea was voluntarily and intelligently made. *Id.* (citing *Boykin v. Alabama*, 395 U. S. 238, 242-44, 89 S. Ct. 1709, 1711-12 (1969)). The Court will uphold the plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. *See Cunningham v. Diesslin*, 92 F. 3d 1054, 1060 (10th Cir. 1996).

8. Ross claims that he was under the impression, at the time he entered into the plea agreement, he would be transferred to a North Carolina facility and be given the opportunity to attend rehabilitation programs. He also says he was not aware of the "African-American" "in-custody" terminology, and that he would not have entered into the plea agreement if he had known this.

9. The plea agreement in this case was not ambiguous. It recited the terms of Ross' incarceration. In exchange for Ross' guilty plea, the government agreed to transfer him to the State of North Carolina, "provided that New Mexico and North Carolina have an agreement regarding the reciprocal exchange of prisoners." (Ex. C to Answer). The agreement clearly provided that if the exchange program did not exist, "the defendant's incarceration shall be transferred to a state facility where the in-custody population contains a significant percentage of African-Americans." (Ex. C to Answer).

10. Ross signed the plea agreement, asserting that he had read and understood the agreement and that he had discussed the case and his constitutional rights with his lawyer. (Ex. C to Answer). His attorney also signed the agreement, stating that he had discussed the case with Ross and advised Ross of his constitutional rights. At the plea hearing on March 23, 1999, the

4

Judge questioned Ross on his understanding of the terms of the plea agreement; Ross responded, "[y]es, sir." (Transcript of Plea Hearing, March 23, 1999 [hereafter, 03/23/99 Hearing], at 3). Solemn declarations in open court carry a strong presumption of verity. *See Lasiter v. Thomas*, 89 F. 3d 699, 702 (10th Cir. 1996). The Judge specifically asked Ross if "anybody made [the defendant] any promises to get you to do this other than what appear here in the Repeat Offender Plea and Disposition Agreement?" Ross responded, "[n]o, sir." (03/23/99 Hearing at 2-3). Ross also stated at his plea hearing that no one threatened him to make the plea and that he was doing it of his own free will. (03/23/99 Hearing at 2).

11. The record also contains the transcript of the Defendant's sentencing hearing. (Transcript of Sentencing Hearing, June 4, 1999 [hereafter, 06/04/99 Hearing], at 4). At the sentencing hearing, the Judge approved the specific terms of the plea agreement concerning Ross' possible transfer to North Carolina. (06/04/99 Hearing at 4). The Petitioner points to what seems to be an excerpt of a previous plea agreement that specifically outlines terms of the possible participation in rehabilitation programs. (See Petitioner's Federal Application filed December 7, 2000). However, there is nothing else in the record to indicate the veracity of that statement.

12. There is nothing on the record to support Ross' contention that the state made false statements or misrepresentations in order for the Petitioner to sign the plea agreement. Furthermore, the record reflects that Ross could have been sentenced to twenty-four years as opposed to twelve years. (03/23/99 Hearing at 3). Ross is a repeat offender with six prior felonies. (06/04/99 Hearing at 3). Also, in return of the defendant's no contest plea for the two drug charges, the state dropped an escape charge, which was on presentation to a grand jury.

5

03/23/99 Hearing at 13). The Court cannot say that he obtained no benefit from the plea, and there is nothing to support his claim that it was not voluntarily and intelligently made.

13. Even if Ross' plea agreement was not made voluntarily and/or intelligently with respect to his order of incarceration, state and federal prisoners generally enjoy no constitutional right to placement in any particular penal institution. *See Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 468 n.3 (10th Cir. 1992); *See also Olim v. Wakinekona*, 461 U.S. 238, 244-48, 103 S.Ct. 1741, 1744-47 (1983).[2] Because prisoners generally have no liberty interest in placement in any particular prison, the failure to send a prisoner to a particular prison does not implicate any federal constitutional right. Therefore, I recommend finding that these three claims of breach of promise, due process violation, and misrepresentation of plea be dismissed.

## INEFFECTIVE ASSISTANCE OF COUNSEL

14. The Petitioner's next argument is one based on ineffective assistance of counsel. In essence, Ross asserts that his "trial" attorney failed to make timely motions, failed to properly meet and communicate with the defendant, was intoxicated at meetings, and misled the defendant with respect to his plea agreement. (Plaintiff's Application at 8; Plaintiff's Response Brief).[3]

---

[2] Prison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution. *See Garland v. Polley*, 594 F.2d 1220, 1222-23 (8th Cir.1979); *see also Olim*, 103 S.Ct. at 1747 n. 9 (state may place inmate in any penal institution unless "the reason for confining the inmate in a particular institution is itself constitutionally impermissible").

[3] As stated earlier in the opinion, the Petitioner has properly exhausted his state court remedies. He brought his ineffective assistance of counsel claim in his original state petition for writ of habeas corpus in August of 2000. (Ex. F to Answer). The state courts denied his claim at both the initial stage and at the reconsideration level. (Exs. G and I to Answer).

15.     The two-prong test for ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668, 104 S. Ct. 2052 (1984), applies to challenges to guilty pleas based upon ineffectiveness of counsel. *See Wallace v. Ward*, 191 F. 3d 1235, 1247 (10th Cir. 1999). To prevail on a claim of ineffective assistance of counsel in the plea process, Ross must show that his attorney's performance fell outside the range of competence demanded of attorneys in criminal cases, *Hill v. Lockhart*, 474 U. S. 52, 56, 106 S. Ct. 366, 369 (1985), and that he was prejudiced by his attorney's inadequate performance in that there is a reasonable probability that, if he had been properly advised, he would not have pled guilty and instead would have insisted on going to trial. *See Id.*, at 58-59.

16.     Under *Strickland*, the Court must indulge a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance. *See Miles v. Dorsey*, 61 F.3d at 1478; *see also Jackson v. Shanks*, 143 F.3d 1313,1319 (10th Cir.). To demonstrate constitutional deficiency, Ross must show that counsel's performance was completely unreasonable, not simply ill-advised in hindsight. *See Fowler v. Ward*, 200 F. 3d 1302, 1309 (10th Cir. 2000); *see also Hoxsie v. Kerby*, 108 F. 3d 1239, 1246 (10th Cir. 1997). In gauging attorney performance, counsel is generally provided wide latitude in making strategic and tactical choices regarding actions taken while serving as counsel. *See Strickland*, 466 U.S at 689. Ross has not overcome that presumption. He claims his attorney was ineffective for the following reasons: his attorney failed to file any motions on the defendant's behalf, counsel allowed the defendant to sign his plea agreement with terms of race specificity geared towards him, counsel visited him in prison, pre-trial, only three times, and counsel, on one occasion, was intoxicated.

17.     Although the Petitioner's argument, both in his federal and his state petitions, is

7

somewhat lengthy, he supplied nothing other than his own statement to support his assertions. Therefore, Counsel's performance in this case was not unreasonable and, even if it had been, the Court cannot say that Ross has established a reasonable probability that but for counsel's unprofessional errors, he would have been transferred to the facility of his choice and been able to attend the rehabilitation programs. The Petitioner does not assert what motions should have been filed or how he was prejudiced by counsel's failure to file. He does not indicate when his attorney was intoxicated nor how he was prejudiced by counsel's failure to make more visits to the prison. Nor does the prisoner indicate how he was prejudiced in signing the plea agreement that was offered to him. In addition, Ross agreed in open court that he understood the nature of his agreement and that he was not forced into signing it. (03/23/99 Hearing at 3). Therefore, I recommend finding that the Petitioner's ineffective assistance of counsel claim be denied.

      18.      The remaining claim in the Petitioner's application is his cruel and unusual punishment assertion. This claim is somewhat confusing. Ross' argues that he was "sentenced by the state to a Negro prison because [he is] Negro. Then if [he] were white [he] could sign a plea to be confined at a white prison. The falseness of this is cruel and unusual at best." This claim does not state a claim for the violation of any federal or constitutional right. "State and federal prisoners generally enjoy no constitutional right to placement in any particular penal institution." *See Prows*, 981 F.2d at 468 n.3; *see also Meachum v. Fano*, 427 U.S. 215, 223 (1976). Neither the protections of the writ of habeas corpus nor those of the Constitution are implicated by a prisoner's transfer to a new location. *See Graham v. Broglin*, 922 F.2d 381 (7th Cir. 1991); *see also Prows*, 981 F.2d at 468 n.3; *see also Frazier v. Dubois*, 922 F2d 560, 561-62 (10th Cir.

1990).[4] Therefore, I recommend finding that Petitioner's claim based on cruel and unusual punishment be denied.

## RECOMMENDED DISPOSITION

I recommend GRANTING the Respondent's Motion to Dismiss the Petition filed March 16, 2001 (*Doc. 16*) and DISMISSING this action with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] Generally, because they contest the fact or duration of custody, prisoners who want to challenge their convictions, sentences or administrative actions which revoke good-time credits, or who want to invoke other sentence-shortening procedures, must petition for a writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 487-88, 93 S.Ct. 1827 (1973). Prisoners who raise constitutional challenges to other prison decisions--including transfers to administrative segregation, exclusion from prison programs, or suspension of privileges, e.g. conditions of confinement, usually proceed under 28 U.S.C. §1983. The more common habeas petitions are those which challenge the validity of a conviction and/or sentence under 28 U.S.C. § 2254 (by prisoners in state custody) or 28 U.S.C. § 2255 (by prisoners in federal custody).